WO

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA


WILLIAM PAUL ROOSMA,      )
                       )
               Plaintiff,     )
                       )
        vs.            )
                       )
CAROLYN W. COLVIN, acting   )
Commissioner, Social Security   )
Administration,              )
                       )    No. 2:15-cv-0002-HRH
             Defendant.   )
_____)

## O R D E R

This is an action for judicial review of the denial of disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434.  Plaintiff has timely filed his opening brief,[1] to which defendant has responded and defendant has filed a motion to remand.[2]  Plaintiff has filed a response to the motion to remand.[3]  Oral argument has not been requested and is not deemed necessary.

---

[1]Docket No. 12.

[2]Docket No. 20.

[3]Docket No. 21.

Procedural Background

Plaintiff is William Paul Roosma.   Defendant is Carolyn W. Colvin, acting Commissioner of Social Security.

On February 2, 2010, plaintiff filed an application for disability benefits under Title II of the Social Security Act.  Plaintiff alleged that he became disabled on January 6, 2010. Plaintiff's application was denied initially and upon reconsideration.  After a hearing on May 23, 2011, an administrative law judge (ALJ) denied plaintiff's claim.  On December 30, 2011, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's July 8, 2011 decision the final decision of the Commissioner.  Plaintiff did not seek judicial review of this decision.

Instead, on February 2, 2012, plaintiff filed a new application for disability benefits under Title II of the Social Security Act.  Plaintiff alleged that he became disabled on January 1, 2012.  Plaintiff alleged that he was disabled because of generalized anxiety disorder, spinal injuries, crepitus in both knees, right torn ankle ligaments, cholesterol, Hillsacks injury, angina, fused neck C5-C6, mild scoliosis, and degenerative joint disease.  Plaintiff's application was denied initially and upon reconsideration.  After a hearing on July 2, 2013, an ALJ denied plaintiff's claims.  On December 18, 2014, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's September 27, 2013 decision the final decision of the Commissioner.  On January 5, 2015, plaintiff commenced this action in

which he asks the court to find that he is entitled to disability benefits.

## General Background

Plaintiff was born on April 24, 1967.  He was 46 years old at the time of the July 2013 hearing.  Plaintiff was married when he filed his application for benefits, but he and his wife divorced in 2013.  Plaintiff has a high school education.  Plaintiff joined the Marine Corp after high school and was in the Corps until 1999.  Plaintiff has a VA [Department of Veterans Affairs] disability rating, "with a combined total rating of 90 percent overall; and ... 100 percent due to unemployability."[4]  Plaintiff receives all of his medical care, for both his physical impairments and his mental impairments, at the VA.

Plaintiff's past relevant work has been as a motorcycle mechanic, an aviation mechanic, test vehicle operator, over-the-road truck driver, service writer or manager, and non-emergency dispatcher.  Plaintiff had 15-16 jobs between the time he got out of the Marine Corps until he stopped working in 2010.[5]  As explained by one of the examining mental health professionals, plaintiff has

> a long history of difficulties in relationships that has resulted in not only unhealthy and sometimes abusive relationships, but also in an inability to successfully sustain employment.  He inevitably would come into conflict with coworkers and employers which eventually would result in his being fired if he

---

[4]Admin. Rec. at 52.  70% of the 90% is for plaintiff's generalized anxiety disorder.  The other 20% is for his physical impairments.  Admin. Rec. at 81.

[5]Admin. Rec. at 787.

didn't quit first.  Undermining his ability to be successful in employment are difficulties with mood stability and long-term personality issues.[6]

<u>The ALJs' Decisions</u>

<u>I.  July 8, 2011 decision</u>

The ALJ first determined that plaintiff met "the insured status requirements of the Social Security Act through December 31, 2014."[7]  The ALJ then applied the five-step sequential analysis used to determine whether a claimant is disabled.[8]

--------------------

[6]Admin. Rec. at 861.

[7]Admin. Rec. at 107.

[8]The five steps are as follows:

> Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled. If not, proceed to step two.
> Step two: Is the claimant's alleged impairment sufficiently severe to limit ... h[is] ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1?  If so, the claimant is disabled. If not, proceed to step four.
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform ... h[is] past relevant work?  If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow ... h[im] to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled.  If not, the

(continued...)

At step one, the ALJ found that plaintiff had "not engaged in substantial gainful activity since January 1, 2010, the alleged onset date...."[9]

At step two, the ALJ found that plaintiff had "the following severe impairments: degenerative disc disease of the cervical spine, mood disorder, impulse control disorder and generalized anxiety disorder...."[10]

At step three, the ALJ found that plaintiff did "not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1...."[11] The ALJ considered Listings 12.04 (affective disorders) and 12.06 (anxiety-related disorders).[12] The ALJ considered the "paragraph B" criteria and found that plaintiff had no restrictions in activities of daily living; moderate difficulties in social functioning; mild difficulties with regard to concentration, persistence, or pace; and no episodes of decompensation, which had been of extended duration.[13] The

---

[8](...continued)
        claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

[9]Admin. Rec. at 107.

[10]Admin. Rec. at 107.

[11]Admin. Rec. at 107.

[12]Admin. Rec. at 108.

[13]Admin. Rec. at 108.

ALJ also considered the "paragraph C" criteria and found that "the evidence fails to establish the presence of the 'paragraph C' criteria."[14]

"Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's RFC." Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1222-23 (9th Cir. 2009). The ALJ found that plaintiff had

> the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(a).[15] Claimant must avoid exposure to hazards such as unprotected heights and moving machinery.  He is additionally limited to work requiring no necessary contact with the general public or customers and only brief, superficial and intermittent necessary contact with co-workers and supervisors.[16]

The ALJ found plaintiff's pain and symptom statements less than credible because he has received conservative treatment for his neck pain, there was no medical evidence to support his allegations as to knee and right shoulder pain, and his mental health conditions appear to be well controlled with medication and counseling.[17]  The ALJ gave little weight

---

[14]Admin. Rec. at 108.

[15]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(a).

[16]Admin. Rec. at 109.

[17]Admin. Rec. at 111.

to the opinions of the state agency consultants.[18]  The ALJ noted plaintiff's VA disability rating of unemployable but pointed out that he was not bound by that rating.[19]

At step four, the ALJ found that plaintiff was "unable to perform any past relevant work...."[20]

At step five, the ALJ found that "there are jobs that exist in significant numbers in the regional economy that the claimant can perform[,]" including that of a housekeeper and an assembler.[21]  This finding was based on the testimony of the vocational expert.[22]

Thus, the ALJ concluded that plaintiff had "not been under a disability, as defined in the Social Security Act, from January 6, 2010 through the date of this decision...."[23]

II.  September 27, 2013 decision

The ALJ first considered whether the Chavez presumption applied because plaintiff had been "found to be not disabled in a final decision by an Administrative Law Judge (ALJ) dated July 8, 2011 based on a prior application for a period of disability and disability

_____

[18]Admin. Rec. at 110-111.

[19]Admin. Rec. at 111.

[20]Admin. Rec. at 111.

[21]Admin. Rec. at 112.

[22]Admin. Rec. at 112.  Dr. Stacia Schonbrun testified as the vocational expert at the first hearing.  Admin. Rec. at 95-100.

[23]Admin. Rec. at 113.

benefits protectively filed on February 2, 2010....”[24]  “A previous final determination of nondisability creates a presumption of continuing nondisability with respect to any subsequent unadjudicated period of alleged disability.”  Smith-Scruggs v. Astrue, Case No. CV 09–4443–OP, 2010 WL 256546, at *1 (C.D. Cal. Jan. 21, 2010) (citing Lester v. Chater, 81 F.3d 821, 827 (9th Cir. 1995)).  “However, the presumption may be overcome by a showing of ‘changed circumstances,’ such as new and material changes to the claimant’s residual functional capacity (‘RFC’), age, education, or work experience.”  Id.  A worsening of the claimant’s condition may also constitute changed circumstances, Ellison v. Astrue, Case No. CV 08-3206-CT, 2008 WL 4425764, at *3 (C.D. Cal. Sept. 29, 2008), as may a new condition. Graham v. Astrue, Case No.  CV 09–06046–SS, 2010 WL 1875669, at *8 (C.D. Cal. May 10, 2010).  Here, the ALJ found “there has not been a showing of a changed circumstance material to the determination of disability and the presumption of continuing nondisability has not been rebutted.  Accordingly, the undersigned adopts the findings of the prior ALJ under the sequential evaluation process for determining disability.”[25]

After finding that plaintiff “meets the insured status requirements of the Social Security Act through June 30, 2015,”[26] the ALJ applied the five-step sequential analysis.

---

[24]Admin. Rec. at 18.

[25]Admin. Rec. at 18.

[26]Admin. Rec. at 20.

At step one, the ALJ found that plaintiff "has not engaged in substantial gainful activity since January 1, 2012, the alleged onset date...."[27]

At step two, the ALJ found that plaintiff had "the following severe impairments: degenerative disc disease of the cervical spine, mood disorder, impulse control disorder, and generalized anxiety disorder...."[28]

At step three, the ALJ found that plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1...."[29]  The ALJ specifically considered Listings 12.04 (affective disorders) and 12.06 (anxiety-related disorders).[30]  The ALJ considered whether plaintiff met the paragraph "B" criteria and found that plaintiff had "no restriction of activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation of extended duration."[31]  The ALJ also considered whether plaintiff met the paragraph "C" criteria and found that "the evidence fails to establish the presence of the

---

[27]Admin. Rec. at 20.

[28]Admin. Rec. at 20.

[29]Admin. Rec. at 21.

[30]Admin. Rec. at 21.

[31]Admin. Rec. at 21.

'paragraph C' criteria of Listing 12.04" and "Listing 12.06."[32]

"Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's RFC." Bray, 554 F.3d at 1222-23.  The ALJ found

> that the claimant has the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b) specifically as follows:  the claimant must avoid hazards such as unpro-tected heights and moving machinery; the claimant is limited to work requiring no necessary contact with the general public or customers and only brief, superficial and intermittent necessary contact with coworkers and supervisors.[33]

The ALJ noted that this was the RFC used by the previous ALJ and that he was adding

> an additional condition:  that the hypothetical claimant can attend and concentrate for two hours at a time, with the two customary ten to fifteen minute breaks and the customary thirty to sixty minute lunch period.  Such a condition does not materially change the prior RFC, an RFC that is now entitled to preclusive effect under the previously mentioned Chavez ruling.[34]

The ALJ considered the lay testimony of plaintiff's then-wife, Christy Roosma, but found it "not credible" because it was "not an unbiased [opinion] because she has a familial motivation to support the claimant as well as a financial interest in seeing the claimant

---

[32]Admin. Rec. at 21.

[33]Admin. Rec. at 22.

[34]Admin. Rec. at 22, n.1.

receive benefits in order to increase the household income...."[35]  The ALJ also found Mrs. Roosma's testimony not credible because "her statements are not supported by the clinical or diagnostic medical evidence...."[36]

The ALJ found plaintiff's pain and symptom statements less than credible because plaintiff "has engaged in a somewhat normal level of daily activity and interaction", because plaintiff "failed to follow treatment recommendations", because plaintiff "received routine conservative treatment for complaints of back pain and anxiety[,]" and because his statements were not supported by the objective medical evidence.[37]

The ALJ gave significant weight[38] to the opinions of Dr. Keer[39] and Dr. Maloney,[40] non-examining physicians who opined as to plaintiff's physical limitations.  The ALJ also

---

[35]Admin. Rec. at 23.

[36]Admin. Rec. at 23.

[37]Admin. Rec. at 23-24.

[38]Admin. Rec. at 25.

[39]On June 11, 2012, Michael Keer, D.O., opined that plaintiff could lift/carry 20 pounds occasionally; lift/carry 10 pounds frequently; stand/walk 6 hours; sit for 6 hours; frequently climb ramps/stairs, balance, stoop, kneel and crouch; and occasionally climb ladders/ropes/scaffolds and crawl.  Admin. Rec. at 130.

[40]On January 7, 2013, Christopher Maloney, M.D., opined that plaintiff could lift/carry 20 pounds occasionally; lift/carry 10 pounds frequently; stand/walk for 6 hours; sit for 6 hours; frequently climb ramps/stairs, balance, stoop, kneel, and crouch; and occasionally climb ladders/ropes/scaffolds and crawl.  Admin. Rec. at 145-146.

gave significant weight[41] to the opinions of Dr. Tomak[42] and Dr. Kerns,[43] non-examining

sources who opined as to the limitations flowing from plaintiff's mental impairments.  The

ALJ gave limited weight[44] to the opinion of Dr. Hassman,[45] an examining source who opined

as to plaintiff's physical limitations.  The ALJ also gave limited weight[46] to the opinion of Dr.

Hart,[47] who did a mental status evaluation of plaintiff.  Finally, the ALJ gave little weight[48]

---

[41]Admin. Rec. at 25.

[42]On June 22, 2012, Sheri Tomak, Psy.D., opined that plaintiff was moderately limited in his ability to interact appropriately with the general public, accept instructions, respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  Admin. Rec. at 132.

[43]On January 9, 2013, Andres Kerns, Ph.d., opined that plaintiff was moderately limited in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, accept instructions, respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  Admin. Rec. at 147.

[44]Admin. Rec. at 25.

[45]On June 1, 2102, Jeri B. Hassman, M.D. opined that plaintiff did not have any physical condition that would impose any limitations for 12 continuous months.  Admin. Rec. at 367.

[46]Admin. Rec. at 25.

[47]On May 8, 2012, Ashley B. Hart II, Ph.D., opined that plaintiff

> at the time of the evaluation was exhibiting behavioral charac-
> teristics consistent with generalized anxiety disorder.  He has a
> history of rage reactions and irritability.  He is receiving a

(continued...)

-12-

to the opinion of Dr. Crago,[49] an examining source who opined as to the

[47](...continued)

> combination of psychiatric services and mental health counsel-
> ing through the Veterans Administration.  These conditions are
> expected to continue for the next 12 months.  Mental health
> conditions in and of themselves do not prevent him from
> competitive employment.  William Roosma's general [under-
> standing] ability falls well within the average to bright average
> range and memory skills fall within the average range. He has
> the ability to remember simple and detailed instructions in a
> work-like environment.  William Roosma has the ability to
> carryout [sic] tasks and maintain regular attendance.  William
> Roosma demonstrates marked deficiencies in social reciprocity.
> He will have difficulty getting along with coworkers and
> responding appropriately to supervision and maintaining
> socially appropriate behavior.  He does have the ability to
> adhere to basic standards of neatness.  William Roosma is
> hypervigilant and able to notice changes in work settings, and
> be aware of normal hazards taking appropriate action.  He is
> able to perform all activities of daily living.

Admin. Rec. at 361-62.

[48]Admin. Rec. at 25.

[49]On May 9, 2013, B. Robert Crago, Ph.D., did a disability evaluation.  Dr. Crago's
Axis I diagnoses were Anxiety Disorder NOS and Major Depression, chronic; and his Axis
II diagnosis was Personality Disorder NOS with Avoidant, Borderline, and Paranoid
features.  Admin. Rec. at 861.  Dr. Crago's disability assessment was as follows:

> Mr. Roosma has a long history of employment problems due to
> his emotional instability and constant interpersonal problems.
> Over time his level of anxiety and depression and difficulties
> with others has continually increased.  The development of
> physical health problems also contributed to exacerbate his
> health problems.  Although Mr. Roosma does not have marked
>
> (continued...)

limitations flowing from plaintiff's mental impairments.

At step four, the ALJ found that plaintiff "is unable to perform any past relevant

_____

[49](...continued)

> or severe problems with concentration and activities of daily living, I believe that he does have marked difficulties in social and/or interpersonal functioning.  It is also my opinion that he has had multiple episodes of decompensation (20+ jobs).  He is currently actively involved in treatment with medication and regular counseling which helps maintain him.  However, I believe if he is placed back into any stressful situation, such as employment, that he will decompensate and fail again and again.  That is, I believe his condition is somewhat fragile and that he is vulnerable to being 'triggered' in any so-cial/occupational situation.  An analogous situation would be an individual with a seizure disorder and/or chronic mental illness.  Such individuals, with appropriate maintenance treatment, can remain somewhat stable, but are extremely vulnerable to decompensation when stressed.  In my opinion, at this point in his life, the best thing Mr. Roosma can do is just manage his mental health disability.

Admin. Rec. 862.  Dr. Crago opined that plaintiff would have noticeable difficulty (defined as being distracted from job activity 11-20% of the work day) with understanding/remem-bering/carrying out detailed instructions, maintaining attention and concentration for extended periods, and setting realistic goals; would have noticeable difficulty (defined as being distracted from job activity more than 20% of the work day) with sustaining an ordinary routine without special supervision and getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; and would not be able to, on a regular, reliable and sustained schedule, work in coordination with or proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychological based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, and accept instructions and respond appropriately to criticism from supervisors.  Admin. Rec. at 863-864.

work...."[50]

At step five, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform[,]" including work as a janitor.[51]  This finding was based on the testimony of the vocational expert.[52]

Thus, the ALJ concluded that plaintiff "has not been under a disability, as defined in the Social Security Act, from January 1, 2012, through the date of this decision...."[53]

## Standard of Review

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner...."  The court "properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards."  Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).  "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).  "'To determine whether

---

[50]Admin. Rec. at 26.

[51]Admin. Rec. at 27.

[52]Admin. Rec. at 27.  Kathleen McAlpine testified as the vocational expert at the second hearing.  Admin. Rec. at 58-74.

[53]Admin. Rec. at 27.

substantial evidence supports the ALJ's decision, [the court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Id. (quoting Andrews, 53 F.3d at 1039). If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the Commissioner's decision. Id. But, the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of supporting evidence.'" Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)).

<u>Discussion</u>

The parties agree that this matter should be remanded for further proceedings. They disagree as to the scope of the further proceedings.

Plaintiff first argues that the ALJ erred in applying <u>Chavez</u> because the ALJ found that there were no changed circumstances. Plaintiff argues that the ALJ should have found changed circumstances because there was evidence that plaintiff had a new ankle condition,[54] Dr. Crago diagnosed plaintiff with a new mental impairment,[55] and Dr. Crago's and Dr. Hart's opinions suggested that plaintiff's mental condition was getting worse.

─────────────────

[54]On January 25, 2012, an MRI of plaintiff's right ankle showed "[p]otential peroneus brevis split tear. Intermediate signal intensity of the peroneous longus tendon distal to the peroneal tubercle may be related to magic angle, degeneration, or tendinosis." Admin. Rec. at 381.

[55]Dr. Crago diagnosed plaintiff with a personality disorder, which had not previously been diagnosed by any mental health care professional. Admin. Rec. at 861.

Plaintiff's new ankle injury was not a severe impairment and thus could not be considered a "changed circumstance." There is nothing in the record to indicate that plaintiff ever received any treatment for a peroneus brevis split tear or that any medical professional ever diagnosed plaintiff with such an impairment.

As for Dr. Crago's new diagnosis and the ALJ's consideration of Dr. Crago's and Dr. Hart's opinions, defendant "concedes that the ALJ erred in evaluating the opinions of Dr. Hart and Dr. Crago."[56]  If Dr. Crago's and Dr. Hart's opinions were credited, they could constitute changed circumstances.  Thus, the ALJ erred in applying <u>Chavez</u> and the ALJ must, on remand, reconsider whether the <u>Chavez</u> presumption has been met in this case.

Plaintiff next argues that the ALJ erred in failing to consider his VA rating.  An ALJ errs if he "fail[s] to consider the VA finding and [does] not mention it in his opinion." <u>McCartey v. Massanari</u>, 298 F.3d 1072, 1076 (9th Cir. 2002).  Here, the second ALJ failed to mention plaintiff's VA rating, which defendant concedes was an error.[57]  On remand, the ALJ must consider plaintiff's VA disability ratings.

Next, plaintiff argues that the ALJ erred in finding his pain and symptom statements less than credible.  "An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible."  <u>Garrison v.</u>

---

[56]Answering Brief and Motion for Remand at 8, Docket No. 20.

[57]<u>Id.</u>

Colvin, 759 F.3d 995, 1014 (9th Cir. 2014). "'First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Lingenfelter v Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). "In this analysis, the claimant is not required to show 'that h[is] impairment could reasonably be expected to cause the severity of the symptom []he has alleged; []he need only show that it could reasonably have caused some degree of the symptom.'" Id. (quoting Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996)). "Nor must a claimant produce 'objective medical evidence of the pain or fatigue itself, or the severity thereof.'" Id. (quoting Smolen, 80 F.3d at 1281). "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1014-15 (quoting Smolen, 80 F.3d at 1281). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" Id. at 1015 (quoting Moore v. Comm'r of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)). "In evaluating the claimant's testimony, the ALJ may use 'ordinary techniques of credibility evaluation.'" Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting Turner v. Comm'r of Social Sec., 613 F.3d 1217, 1224 n.3 (9th Cir. 2010)). "For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the

claimant's conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and whether the claimant engages in daily activities inconsistent with the alleged symptoms[.]"  Id.  (internal citations omitted).

The ALJ found plaintiff's pain and symptom statements less than credible because plaintiff "has engaged in a somewhat normal level of daily activity and interaction", because plaintiff "failed to follow treatment recommendations", because plaintiff "received routine conservative treatment for complaints of back pain and anxiety[,]" and because his statements were not supported by the objective medical evidence.[58]  Plaintiff argues that these were not clear and convincing reasons.

As for the first reason, that plaintiff engaged in a normal level of daily activity, the ALJ emphasized that plaintiff did some household chores, attended church and went fishing.[59]  The ALJ also noted that plaintiff went hunting, attended monthly gun club meetings, and could "ride his motorcycle on trips of up to 50 miles...."[60]  The ALJ found these activities inconsistent "with the activity level of a totally disabled individual."[61]

"[T]he mere fact that a plaintiff has carried on certain daily activities ... does not in

---

[58]Admin. Rec. at 23-24.

[59]Admin. Rec. at 23.

[60]Admin. Rec. at 23.

[61]Admin. Rec. at 23.

any way detract from h[is] credibility as to h[is] overall disability." <u>Vertigan v. Halter</u>, 260

F.3d 1044, 1050 (9th Cir. 2001).  The fact that plaintiff went to church,[62] went fishing[63] and

hunting,[64] rode a motorcycle,[65] and did a few household chores[66] does not mean that his pain

and symptom statements were not credible, particularly as to those related to plaintiff's

---

[62]At a counseling session on June 20, 2013, plaintiff reported that he had started attending church weekly, which he enjoyed.  Admin. Rec. at 960.  At the July 2, 2013 hearing, plaintiff testified that the only socializing he had done recently was at church. Admin. Rec. at 57.

[63]At a June 21, 2010 counseling session, plaintiff reported that he had been fishing. Admin. Rec. at 757.  At the May 23, 2011 hearing, plaintiff testified that "[o]nce in a while if I can get motivated enough, I'll go out and sit on the bank and do a little fishing."  Admin. Rec. at 82.  At a February 28, 2012 counseling session, plaintiff reported that had been fishing the past weekend.  Admin. Rec. at 547.  At a June 6, 2012 counseling session, plaintiff reported that he "[w]ent fishing 3 days in a row with friend and then laid around home in pain for 2 weeks."  Admin. Rec. at 539.  In a April 22, 2012 function report, plaintiff reported that he goes fishing 2-4 times per month.  Admin. Rec. at 248.

[64]In an April 22, 2012 function report, plaintiff stated that he went bird hunting 5-7 times a year.  Admin. Rec. at 248.  In a November 29, 2012 function report, he stated that went hunting 5-8 times a year.  Admin. Rec. at 291.

[65]In an April 22, 2012 function report, plaintiff stated that he can ride his motorcycle "when I'm up to it."  Admin. Rec. at 247.  In a November 29, 2012 function report, he stated that he goes for short motorcycle rides 2-8 times per month.  Admin. Rec. at 291.  At the May 23, 2011 hearing, he testified that he could ride his motorcycle for short trips around town with no problem.  Admin. Rec. at 86.

[66]In an April 22, 2012 function report, plaintiff stated that he tries to do laundry weekly and washes dishes two times a month.  Admin. Rec. at 247.  In a November 29, 2012 function report, plaintiff stated that "once in a blue moon" he cleans the bathroom.  Admin. Rec. at 290.  At the May 23, 2011 hearing, plaintiff testified that he does laundry weekly, takes care of the trash and the kitty litter, and "once in a blue moon" will vacuum.  Admin. Rec. at 83.

mental impairments.  Moreover, the ALJ did not explain how doing these daily activities would translate into work activity.  See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) ("many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication").  This was not a clear and convincing reason to find plaintiff's pain and symptom statements less than credible.

As for the second reason, that plaintiff failed to follow treatment recommendations, the ALJ noted that plaintiff "declined to participate in therapy" and was not always compliant with his medication.[67]  The ALJ explained that "[t]his demonstrates a possible unwillingness to do what is necessary to improve his condition" and "[i]t may also be an indication that his symptoms were not as severe as he purported."[68]

Failure to follow treatment recommendations is a proper reason to discount a claimant's statements.  Orn v. Astrue, 495 F.3d 625, 636 (9th Cir. 2007).  But, the only therapy plaintiff ever declined was couples therapy.[69]  Plaintiff did not decline to participate in therapy that was directly related to his anxiety disorder, and in fact, in 2013, began seeing a counselor at the VA at least monthly.  As for plaintiff's noncompliance with medication,

---

[67]Admin. Rec. at 23.

[68]Admin. Rec. at 23.

[69]Admin. Rec. at 539.

the record does show that plaintiff was not always compliant in terms of taking his medication for his anxiety and depression.[70]  However, if a claimant's noncompliance is attributable to his mental illness, his noncompliance may be excused. Molina, 674 F.3d at 1113.  Thus, the second reason given by the ALJ for finding plaintiff's pain and symptom statements was not clear and convincing.

As for the third reason, that plaintiff received conservative treatment for his back pain and anxiety, "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (quoting Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995)).  Plaintiff's treatment for his back pain was conservative.  His doctors at the VA did not prescribe pain medication, they did not do any injections, and they did not recommend surgical intervention.  Plaintiff's treatment for his anxiety was also conservative.  Plaintiff's treatment consisted primarily of one medication and counseling sessions.  Thus, this was a clear and convincing reason to find plaintiff's pain and symptom statements less than credible.

As for the fourth reason, that plaintiff's pain and symptom statements were not supported by objective medical evidence, "[a]lthough lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his

---

[70]Admin. Rec. at 289, 451, 514 & 915.

credibility analysis." Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005). Here, the objective medical evidence does not support plaintiff's statements as to his physical limitations, however, there is sufficient objective evidence to support his statements as to the limitations flowing from his mental impairments. Plaintiff's mental status exams often showed that plaintiff's mood was anxious, depressed, or sad[71] and that his insight and judgment were fair.[72]

An ALJ's credibility finding may still be valid, even if some of the reasons for discounting a claimant's statements were not clear and convincing, if the finding remains supported by substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001). Here, the ALJ's credibility finding is not supported by substantial evidence as most of the reasons he gave for discounting plaintiff's pain and symptoms statements were improper. On remand, the ALJ must reconsider plaintiff's credibility.

Plaintiff next argues that the ALJ improperly discounted the testimony of plaintiff's ex-wife, Christy Roosma.[73] The ALJ considered Mrs. Roosma's testimony but found it "not

_____

[71]Admin. Rec. at 452, 514, 539, 548, 956, 960 & 971.

[72]Admin. Rec. at 452, 514, 539 & 903.

[73]Mrs. Roosma completed a third-party function report on April 23, 2012. Admin. Rec. at 267-274. Mrs. Roosma reported that plaintiff does laundry weekly, does dishes a couple times a month, goes outside about two hours per day, can drive a car, and goes shopping a couple times per month for a couple hours at time for cat food, pet needs, and toiletries. Admin. Rec. at 269-270. Mrs. Roosma also reported that plaintiff does not do

(continued...)

credible" because it was "not an unbiased [opinion] because she has a familial motivation to support the claimant as well as a financial interest in seeing the claimant receive benefits in order to increase the household income...."[74]   The ALJ also found Mrs. Roosma's testimony not credible because "her statements are not supported by the clinical or diagnostic medical evidence...."[75]

"[I]n order to discount competent lay witness testimony, the ALJ must give reasons that are germane to each witness."  Molina, 674 F.3d at 1114 (citation omitted).  The first reason given by the ALJ was improper.  If a familial relationship was a sufficient reason to reject lay testimony, an ALJ would never have to consider such testimony.  But, the second reason was germane.  See Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir.2005) (holding that "[i]nconsistency with medical evidence" constitutes a germane reason for discrediting the testimony of a lay witness).  On remand, the ALJ need not reconsider Mrs. Roosma's testimony.

Finally, plaintiff argues that the ALJ erred at step five.  At step five, the ALJ found

---

[73](...continued)
much walking, that he is easily distracted, that he can follow written instructions good, that he does not follow spoken instructions well, that he does not get along with authority figures well at all, that he does not handle stress well, and that change aggravates him. Admin. Rec. at 272-273.

[74]Admin. Rec. at 23.

[75]Admin. Rec. at 23.

that plaintiff could work as a janitor.[76]  Plaintiff argues that this was error because plaintiff was limited to work that did not have "necessary contact with the general public or customers."   The vocational expert testified that plaintiff could work in the "janitorial" field, DOT No. 323.687-014.[77]  DOT No. 363.687-0014 is titled "cleaner/housekeeper (any industry)."  A "cleaner/housekeeper" "[c]leans rooms and halls in commercial establishments, such as hotels, restaurants, clubs, beauty parlors, and dormitories" and performs duties such as "[s]orts, counts, folds, marks, or carries linens. Makes beds. Replenishes supplies, such as drinking glasses and writing supplies. Checks wraps and renders personal assistance to patrons."  Plaintiff argues that it is impossible for a cleaner/housekeeper to clean a motel room without having some necessary contact with the public or customers. See Norris v. Colvin, Case No.  EDCV 12–1687 RNB, 2013 WL 3676661, at *3 (C.D. Cal. July 11, 2013) ("The job of cleaner/housekeeper (DOT No. 323.687–014) entails a duty to render personal assistance to patrons.  The Court finds that this requirement conflicts with plaintiff's limitation to no interaction with the public.").   Nonetheless, McAlpine, the vocational expert, testified that plaintiff would be able to perform the job of cleaner/housekeeper and that her testimony was consistent with the DOT.[78] Plaintiff argues,

---

[76]Admin. Rec. at 27.

[77]Admin. Rec. at 65.

[78]Admin. Rec. at 65.

-25-

however, that the ALJ should have recognized that there was a conflict between the DOT job description and the vocational expert's testimony.  If there is a conflict, "the ALJ must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the Dictionary of Occupational Titles." <u>Cummins v. Astrue</u>, Case No. 2:12–cv–00443–RFB-GWF, 2015 WL 5146890, at *16 (D. Nev. Sept. 2, 2015) (citing SSR 00–4p).  Plaintiff argues that the vocational expert provided no explanation for this conflict and thus the ALJ erred in relying on her testimony.

As defendant points out, the job of cleaner/housekeeper can be performed in any number of commercial establishments, some of which would not require contact with patrons.  For example, a cleaner might work in a restaurant or club in which his duties could be performed when the establishment is closed.

Plaintiff also argues that there was a conflict between the vocational expert's testimony and the DOT because she testified that a "janitor" and a "cleaner/housekeeper" are the same thing.[79]  Plaintiff argues, however, that a cleaner/housekeeper is not the same job title as a "janitor" and points out that the DOT includes several specific occupations entitled "janitor", all of which are exertionally medium work, as opposed to the "cleaner/housekeeper" job, which is exertionally light work.  For example DOT No.

---

[79]Admin. Rec. at 65.

382.664-010 is the job title for "janitor (any industry)", which is listed as medium work. Because there are no "light" janitor jobs, plaintiff argues that the vocational expert's testimony facially conflicted with the DOT and the vocational expert provided no reasonable explanation for this conflict.

Although the vocational expert testified that her testimony was consistent with the DOT, that does not appear to have been the case. A "janitor" may not be the same as a "cleaner/housekeeper" under the DOT. Thus, on remand, the ALJ should obtain supplemental vocational expert testimony.

<u>Conclusion</u>

The decision of the Commissioner is reversed and this matter is remanded for further proceedings consistent with this opinion.

DATED at Anchorage, Alaska, this 9th day of October, 2015.

/s/ H. Russel Holland
United States District Judge